## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  **SABINE CROWDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.** CIV-18-14-F |
| | ) | |
| (1) **METROPOLITAN LIFE INSURANCE** | ) | |
| **COMPANY,** | ) | **ATTORNEY LIEN CLAIMED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Sabine Crowder, for her cause of action against Defendant Metropolitan Life Insurance Company ("MetLife"), alleges and states as follows:

### I.      Jurisdiction and Venue

1.      Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3.      Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2) and pursuant to 28 U.S.C. § 11391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II.      Parties and Plan

4.      Plaintiff is a fifty-four (54) year-old woman.  She resides in Oklahoma City, Oklahoma and within this judicial district.

5.     MetLife is a foreign insurance company having its principal place of business in the State of New York.  At all relevant times, MetLife was licensed and authorized to sell insurance within the State of Oklahoma and it transacts business within the State of Oklahoma and within this judicial district.

6.     At all relevant times, Plaintiff was employed by ONE Gas, Inc. ("ONE Gas") and worked as a Supervisor within its Administrative Services section.

7.     At all relevant times, ONE Gas provided long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan (the "LTD Plan").  The LTD insurance coverage applicable to Plaintiff was pursuant to a group LTD insurance policy issued by MetLife, Policy Number 154408-1-G.

8.     At all relevant times, Plaintiff was eligible to participate in the LTD Plan, did participate in the LTD Plan, and was a participant in the LTD Plan within the meaning of 29 U.S.C. § 1002(7).

9.     The LTD Plan is and was at all relevant times an "insurer administration" type plan pursuant to the policy issued by MetLife to ONE Gas.  As such, the LTD Plan is administered by MetLife and benefits under the Plan are paid by it.  Benefit determinations with respect to Plaintiff's claim for LTD benefits under the LTD Plan are, and at all times relevant, were made by MetLife.

10.     MetLife is and was an LTD Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

### III.     Allegations Applicable to All Claims

11.     Plaintiff began working for ONE Gas in July 1984.

12.     As a consequence of her worsening spinal impairments and related chronic low back and neck pain, Plaintiff ceased working after September 16, 2014.

13.     Plaintiff's salary at the time she last worked was $6,333.33 per month.

14.     She made a claim for Sickness Benefits pursuant to ONE Gas's Sickness Benefits policy. She was approved by ONE Gas to receive Sickness Benefits.

15.     In January 2015, as part of Plaintiff's transition from Sickness Benefits to LTD benefits, she initiated a LTD claim with MetLife.

16.     As part of its LTD claim evaluation, a MetLife medical director, Dr. Modupeola Adewunmi, reviewed Plaintiff's claim file and prepared a report.

17.     Therein, Dr. Adewunmi endorsed that Plaintiff had restrictions and limitations for a two-month period such that Plaintiff was unable to perform the material duties of her ONE Gas job.

18.     Accordingly, by letter dated April 22, 2015, MetLife notified Plaintiff that her claim for LTD benefits was approved.

19.     By letter dated April 23, 2015, MetLife advised Plaintiff to pursue Social Security Disability Income ("SSDI") benefits.  It recommended that Plaintiff use a MetLife-provided representative, which was available to her at no cost.

20.     In May 2015, Plaintiff retained the MetLife-suggested SSDI representative. Thereafter, Plaintiff filed a claim with the Social Security Administration ("SSA") seeking SSDI benefits.

21.     In July 2015 and thereafter MetLife sought to update the file information and records. It received updated information and records from Plaintiff's physicians.

22.     MetLife's medical director, Dr. Adewunmi, reviewed the information and noted her observations and conclusions on October 23, 2015.

23.     In pertinent part, Dr. Adewunmi wrote "in my opinion the claimant's findings and CT discogram findings **support radiculopathy**." (Emphasis added).

24.     Dr. Adewunmi also endorsed permanent restrictions and limitations as follows

- standing/walking up to 10 minutes at a time for a total of 1 hour in an 8-hour period;
- lift/carry up to 10 lbs. occasionally;
- no pushing/pulling/climbing/twisting/bending/stooping/kneeling;
- no above chest level work but reach above shoulder level occasionally;
- continuous sitting with the ability to shift positions when seated (and she may benefit from having 2-3 minute "stand and stretch" periods at least every hour, in addition to standard morning, afternoon and lunch breaks).

25.     In view of Dr. Adewunmi's opinion about Plaintiff's restrictions and limitations, MetLife re-evaluated whether Plaintiff could perform the duties of her job, which it regarded as sedentary based on U.S. Department of Labor's *Dictionary of Occupational Titles* ("DOT") data.

26.     Based on Dr. Adewunmi's addendum report, MetLife terminated the payment of LTD benefits to Plaintiff effective December 23, 2015.  According to MetLife's letter dated December 23, 2015, "it appears that you are able to meet the demands necessary to perform the essential functions of your own occupation as Supervisor Accounting Clerks, which is classified by the U.S. Department of Labor as sedentary work."

27.     The LTD Plan and related MetLife policy do <u>not</u> contain any provision whereby the substantial and material duties of Plaintiff's "own occupation" may be or shall be determined by reference to some generalized occupational data set like the DOT.

28.     Plaintiff appealed that adverse claim decision by letter dated May 26, 2016, and she submitted additional information and records in support.

-4-

29.     Included among Plaintiff's appeal exhibits was a Physical Capacities Evaluation ("PCE") from her treating neurosurgeon Dr. Robert Tibbs.  In the PCE dated April 13, 2016, Dr. Tibbs endorsed diagnoses of cervical radiculopathy and lumbar radiculopathy.

30.     As part of processing Plaintiff's appeal, MetLife requested that an external file review be done.  A physician consultant review report dated July 6, 2016 was provided by Dr. Dennis S. Gordan, and he returned conclusions that supported Plaintiff's ability to work.

31.     Dr. Gordan never treated or examined Plaintiff.

32.     In his report, Dr. Gordan expressed doubt about a radiculopathy diagnosis.

33.     However, Dr. Gordan did not comment on or discuss Dr. Adewunmi's endorsement of a radiculopathy diagnosis.

34.     As part of the LTD claim appeal process, Plaintiff's treating neurosurgeon provided information in rebuttal to Dr. Gordan's report.  Dr. Tibbs stated:

> It remains my opinion, and I have reviewed her insurance company's physician note, that there is no way she could tolerate working five days a week up to six hours a day regardless of any type of restrictions.  She has absolutely no sitting or standing tolerance at this point.  She has undergone a four-level cervical 360 fusion. That alone, despite her reasonably good outcome from that, would make it quite difficulty (sic) for her to have any type of desk duty and certainly lifting duty. Therefore, it remains my opinion that she is not a candidate for gainful employment, and I have encouraged her again to pursue her disability claim."

35.     MetLife provided the rebuttal information to Dr. Gordan and requested an addendum report. By report dated August 17, 2016, Dr. Gordan admitted that his previous opinion about Plaintiff's restriction and limitations was wrong.  Dr. Gordan said, "I would have to concede that the claimant's tolerance for sitting is likely less than I originally assessed."

36.     Dr. Gordan, however, persisted in his advocacy about "no clear evidence of radiculopathy."

37.     Dr. Gordan, of course, is not truly an independent physician consultant.  He has previously performed a substantial number of reviews for MetLife and earns a substantial amount of money from it.  *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 901-02 (9th Cir. 2016.)

38.     By letter dated August 25, 2016, MetLife reversed its decision to terminate Plaintiff's LTD benefits.

39.     A few days later, by letter dated September 1, 2016, MetLife notified Plaintiff that her LTD benefits would end on March 15, 2017, pursuant to the policy's limited benefit provision about diseases or disorders of the spine.

40.     The invoked limited benefit provision states as follows:

**For Disability Due to Neuromuscular, Musculoskeletal or Soft Tissue Disorder, Chronic Fatigue Syndrome and related conditions**

If You are Disabled due to one or more of the following, We will limit Your Disability benefits to a lifetime maximum equal to the lesser of:

- 24 months; or
- the Maximum Benefit Period.

Your Disability benefits will be limited as stated above for:

2.  Neuromuscular, musculoskeletal or soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the Disability has objective evidence of:

- Seropositive Arthritis;
- Spinal Tumors, malignancy, or Vascular Malformations;
- Radiculopathies;
- Myelopathies;
- Traumatic Spinal Cord Necrosis; or
- Myopathies

\* \* \*

**Seropositive Arthritis** means an inflammatory disease of the joints supported by clinical findings of arthritis plus positive serological tests for connective tissue disease.

**Spinal** means components of the bony spine or spinal cord.

**Tumor(s)** means abnormal growths which may be malignant or benign.

**Vascular Malformations** means abnormal development of blood vessels.

**Radiculopathies** means disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology.

**Myelopathies** means disease of the spinal cord supported by objective clinical findings of spinal cord pathology.

**Traumatic Spinal Cord Necrosis** means injury or disease of the spinal cord resulting from traumatic injury with resultant paralysis.

**Myopathies** means disease of skeletal muscle supported by clinical, histological, biochemical and/or electrodiagnostic findings.

41.     By letter dated February 14, 2017, MetLife advised Plaintiff that her LTD benefits would indeed end effective March 15, 2017.  MetLife explained that "we have determined that your disability is solely based on degeneration of your cervical disc, and therefore falls within the 24 month limited benefit provision."

42.     Plaintiff again appealed MetLife's adverse claim decision and submitted additional information and records in support. She asserted that there was objective evidence of radiculopathy – as reflected in the radiology reports, the clinical examination findings along with her reports of radiculopathy-like symptoms of pain, tingling, and weakness, and Dr. Adewunmi's addendum report endorsing a radiculopathy diagnosis.

43.     Included among Plaintiff's appeal exhibits was the SSA's Notice of Decision - Fully Favorable and related Decision, wherein the SSA found Plaintiff to be totally disabled under its rules.

44.     By its Decision dated February 23, 2017, the SSA found that Plaintiff had "the following 'severe' physical impairments: disorders of the cervical, thoracic, and lumbar spine,

discogenic and degenerative status post November 2010 fusion, C5-7, August 2012 fusion, C4-T1, and April 2013 fusion, C4-T1, **with radiculopathy** . . . ." (Emphasis added).

45.     Plaintiff also submitted medical records for the period January 2017 through June 2017, which confirmed her continuing and more recent treatment for chronic pain related to her severe and pain-producing physical impairments.

46.     Including among those records were three MRI study reports done in May 2017. The three MRI study reports are objective evidence of radiculopathy.

47.     The MRI of the thoracic spine confirmed a central disc bulge/protrusion at T7-8 with some canal space narrowing.

48.     The MRI of the cervical spine confirmed a broad bulging disc and protrusion at C3-4 with significant degenerative canal space narrowing. The anteroposterior (AP) canal space diameter was noted to be reduced to 10 mm, which is indicative of mild central stenosis.  Mild stenosis of the right foramen and mild narrowing on the left was also revealed by the MRI.

49.     The MRI of the lumbar spine confirmed degenerative disc disease in the lumbar spine, a mild bulging disc at L3-4 with some canal space narrowing.

50.     As part of its appeal processing, MetLife requested medical records review by what it refers to as an "independent physician consultant."  MetLife's consultant reviewed the file and issued a report dated August 31, 2017.

51.     The file-reviewing physician, Dr. Kevin Trangle, opined that "a cervical and/or lumbar radiculopathy is not supported and no limitations or restrictions related to such a condition have been established as of 03/16/2017 forward."

52.     Dr. Trangle never treated or examined Plaintiff.

53.     Dr. Trangle did not comment on or discuss Dr. Adewunmi's endorsement of a radiculopathy diagnosis.

54.     By letter dated October 18, 2017, MetLife upheld the termination of payment on Plaintiff's LTD claim.  In so doing, MetLife relied on the opinion of the most recent file review done by its physician consultant Dr. Trangle.  It explained that "we find that Ms. Crowder has received the combined lifetime maximum 24 months of benefits allowed for her Neuromuscular, musculoskeletal and soft tissue disorders . . . .  As such, we find Ms. Crowder no longer meets the Definition of Disability, and benefits beyond March 15, 2017 are not payable under the Plan."

55.     In reaching its LTD claim decision and during the course of its investigation, MetLife failed to apply the terms of the applicable policy to Plaintiff's claim, conducted a skewed and self-interested investigation and evaluation of her claim without treating Plaintiff's interest with equal regard to its own, mischaracterized record information, cherry-picked record information which might lend support to a claim denial while de-emphasizing or disregarding record information supportive of her LTD claim, and unreasonably relied on the opinion of biased and unqualified file-reviewing physicians to support the denial of Plaintiff's claim.

56.     Plaintiff has exhausted her administrative remedies under the Plan.

## IV.     Statement of Claims

### First Claim

### ERISA – Improper Denial of Benefits

57.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint as though set forth at length herein and further alleges:

58.     At all relevant times, the terms of the LTD Plan required payment of LTD benefits to Plaintiff due to her debilitating impairments.

59.     The failure of MetLife to pay LTD benefits to Plaintiff beyond March 15, 2017 is contrary to the terms of the LTD Plan and is wrong, incorrect, and/or arbitrary and capricious.

60.     Plaintiff seeks a declaration from this Court that she is entitled to the LTD benefits due her under the terms of the LTD Plan, and an Order that all future disability benefits (and related other employee benefits, if any), should be paid pursuant to the terms of the Plan.

61.     Alternatively, Plaintiff seeks a declaration from this Court that MetLife's claim decision is erroneous, unreasonable, and/or arbitrary and capricious, and an Order reinstating her LTD claim and remanding the matter to MetLife for a full and fair review.

62.     By reason of MetLife's incorrect, unreasonable, and/or arbitrary and capricious claim decision, Plaintiff has been forced to retain an attorney to secure the LTD benefits due her under the terms of the Plan, for which Plaintiff has and will incur attorney fees and costs.

63.     Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Sabine Crowder demands judgment against Defendant Metropolitan Life Insurance Company, as follows:

(1)     for a declaration that Defendant improperly terminated payment on her claim for LTD benefits, and that she is entitled to receive the amount of benefits due under the terms of the LTD Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2)     for a declaration that all future LTD benefits (and related other employee benefits, if any) be paid pursuant to the terms of the LTD Plan; and/or

(3)     for a declaration that Defendant denied her a full and fair review, and that as a consequence thereof, her LTD claim should be reinstated and remanded for further claims procedures;

(4)     for the costs of this action, and Plaintiff's attorney fees pursuant to 29 U.S.C. § 1132(g); and

(5)     for such other and further relief, as may be deemed just and proper by the Court.

**Respectfully submitted:**

**SHOOK & JOHNSON, PLLC**

**By:**   **s/ Jonathan E. Shook**
        **Jonathan E. Shook, OBA #17343**
        **7420 S. Yale Avenue**
        **Tulsa, OK 74136**
        **Telephone:  (918) 293-1122**
        **Facsimile:  (918) 293-1133**
        **jshook@shookjohnson.com**

**ATTORNEY FOR PLAINTIFF**